

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
JANET FASHAKIN,

                        Plaintiff,          **MEMORANDUM & ORDER**

      -against-

                                                     05 CV 3080 (SLT) (RER)
NEXTEL COMMUNICATIONS,
TIMOTHY DONAHUE, RISK
MANAGEMENT ALTERNATIVES, INC.,
ALLIED INTERSTATE, INC., and
TRANS UNION, L.L.C.,

                      Defendants.
-------------------------------------------------X
TOWNES, U.S.D.J.

      Plaintiff Janet Fashakin ("Plaintiff" or "Fashakin") brings this action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Fair Credit Reporting Act ("FRCA"), 15 U.S.C. § 1681 *et seq.*, and New York State Law for the injuries she alleges she suffered after she terminated her cellular telephone contract with defendant Nextel Communications, Inc. ("Defendant Nextel" or "Nextel"). Both Nextel and defendant Timothy Donahue ("Defendant Donahue" or "Donahue") (collectively, the "Instant Defendants") move to dismiss the complaint for failure to state a cause of action under Rule 12(b)(6). Based on the submission of the parties, and for the reasons stated below, the Instant Defendants' motion is granted in part and denied in part.

I.  *Statement of Facts*

For the purpose of resolving the motion before the Court, all factual allegations in the complaint (the "Complaint") are presumed to be true. *See Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993).

Plaintiff subscribed for Nextel's wireless telephone service in 2001 and remained a subscriber until approximately 2004, when she terminated her contract with Nextel after becoming dissatisfied with its service. (Complaint ¶¶ 8-9.) Thereafter, Plaintiff began receiving phone calls from representatives of Risk Management Alternatives, Inc. ("RMA"), a defendant not party to the instant motion, who was seeking to collect a debt that Defendant Nextel alleged to be outstanding at the time Plaintiff terminated her telephone service. (Complaint ¶¶ 10, 12.) The callers informed Plaintiff that she could pay the amount by telephone using a credit card "and that failure to do so [would] result in them reporting her to the Credit Reporting Agencies, and damaging her credit." (Complaint ¶ 12.) Plaintiff also alleges that the callers refused to identify themselves even though she requested that they do so, and that they called her at her office "with the intent to ridicule and embarrass" her. (Complaint ¶¶ 13-14.)

After being turned down by at least two credit card companies and having an existing card (which, at that time, carried no balance) closed by the creditor in December 2004, Plaintiff ordered a copy of her credit report and discovered that "RMA on behalf of defendant Nextel" "caused a derogatory report to be filed" against her "as threatened by the aforementioned callers." (Complaint ¶ 18.) When Plaintiff contacted RMA, she was told by them to contact Nextel directly. (Complaint ¶ 21.) Nextel informed Plaintiff that it was not responsible for her credit report and could not effect alterations thereto. (Complaint ¶ 22.)

Plaintiff then wrote to defendant Trans Union, LLC, ("Trans Union"), a credit reporting bureau (and party to this action, though not to the instant motion), seeking the documentation that justified the "derogatory filing." (Complaint ¶ 23.) Trans Union responded to Plaintiff and informed her that RMA confirmed the debt. (Complaint ¶ 24.) Plaintiff alleges that Trans Union "would not provide Plaintiff with any such report." (*Id.*) Plaintiff also wrote to Defendant Donahue, Chief Executive Officer ("CEO") of Nextel, complaining of the situation. (Complaint ¶25.) Plaintiff was then contacted by Regina Sigalos ("Sigalos") of Nextel's legal department. (Complaint ¶ 26.) Though the two spoke on at least one occasion, Plaintiff was told to call Sigalos back, but Sigalos never accepted Plaintiff's calls. (Complaint ¶ 26.)

In January 2005, the phone calls from debt collectors to Plaintiff's home and business resumed. (Complaint ¶ 29.) Plaintiff refused to give her credit card information over the phone, and asked that the caller send Plaintiff a letter explaining the charges. (*Id.*) On January 17, 2005, Plaintiff received a "Special Notice and Payment Demand" from defendant Allied Interstate, Inc. ("Allied"), who is not party to the instant motion. (Complaint ¶ 30.) Plaintiff, "unable to sleep due to emotional, mental and physical distress," decided, on January 22, 2005 at 5:09 a.m., to pay by phone the $237.83 Allied alleged she owed. (Complaint ¶ 31.) "Despite this payment and the promise by defendant Allied to rectify the damage, nothing was done." (Complaint ¶ 32.) Plaintiff alleges that the damage to her credit report has caused her to experience difficulty obtaining a mortgage to buy an office building for her business and obtaining favorable interest rates for the loans she borrows to pay for her L.L.M. program, as well as her children's college tuition. (Complaint ¶ 33.) Plaintiff alleges that "[e]ach of the defendants have engaged in an act or omission prohibited by the applicable FDCPA and FRCA." (Complaint ¶ 35.) Plaintiff makes

3

no reference to specific provisions of either act.

The Complaint alleges four causes of action and names RMA, Allied, Trans Union, Nextel and Donahue as defendants. The only cause of action mentioning the Instant Defendants is the first. It reads:

> 36. Plaintiff repeats paragraphs 1-35 inclusive of this Complaint.
>
> 37. Nextel engaged in a pattern of conduct that is harassing, intimidating and malicious, inflicting mental anguish, emotional and physical distress on the plaintiff.
>
> 38. Defendant Donahue as CEO was negligent in his handling of the matter and stood by as Nextel inflicted all the injuries on Plaintiff. He had the power to rectify Nextel's misdeeds but did nothing. He is contributorily liable for the injury to Plaintiff.

(Complaint ¶¶ 36-38.)

Defendants Nextel and Donahue move to dismiss under Rule 12(b)(6). Because Plaintiff's Complaint fails to explain which sections of which acts have been violated by which Defendants, the Instant Defendants were left to educated guesswork. First, Defendants argue that they are not "debt collectors," and thus cannot be held liable under any provisions of the FDCPA. Second, with respect to the FCRA, Defendants argue that Plaintiff has failed to state a cause of action under the only applicable section, and that under 15 U.S.C. § 1681s-2(b), which sets forth the "Duties of furnishers of information upon notice of dispute," Nextel is under no duty to investigate a dispute until it receives notice from a consumer reporting agency that one has been made by a consumer. As Plaintiff's Complaint fails to specifically allege that either Nextel or Donahue received notice of her complaint to Trans Union, the Instant Defendants maintain that

4

she has not fulfilled an essential requirement of 15 U.S.C. 1681s-2(b). The Instant Defendants also point out that the Complaint states that RMA, and not Nextel, verified the alleged debt to Trans Union, and that Plaintiff failed to allege both that Donahue and Nextel reported inaccurate information to a consumer reporting agency and that they failed to conduct a reasonable inquiry of her dispute. (Def. Reply Mem. at 2-3.)

II. *Discussion*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint where the plaintiff has failed to state a claim upon which relief can be granted.[1] When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleadings to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief. *Ferran*, 11 F.3d at 22. The court may grant a Rule 12(b)(6) motion only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

---

[1] Attached as exhibits to Plaintiff's Affidavit in Opposition to the Instant Defendants' motion are three documents not previously attached to the Complaint. (Fashakin Aff. Exs. 2, 3.) The first is a December 27, 2004 letter from Trans Union to Plaintiff informing her of their procedure for investigating disputed information. (*Id.* Ex. 2 at 1.) The second is a letter from Trans Union to Plaintiff informing her that RMA confirmed that she owed a debt to Nextel. (*Id.* at 3.) The third is an email from Sigalos to Plaintiff informing her that Sigalos was interested in speaking with Plaintiff regarding her alleged FDCPA allegations. (Fashakin Aff. Ex. 3.)

Defendants argue that these documents (two of which are specifically mentioned in the Complaint, *see* Complaint ¶¶ 24, 26) "present new facts," "were not attached to the original pleadings and are therefore outside the scop of this motion to dismiss." (Def. Reply. Mem. at 2.) Because consideration of Plaintiff's Exhibits 2 and 3 does not affect the outcome of the instant motion, the Court need not address this argument.

*Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### A. *Liability Under the FDCPA*

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. 1692(e). "[T[he need for the FDCPA arose because of collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (*quoting* S.Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696)). As a result, the FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001).

The FDCPA applies only to "debt collectors," a term defined as follows:

> [t]he term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect. . .debts owed or due or asserted to be owed or due *another*. . .

> [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6) (emphasis added). Plaintiff does not allege that Defendants Nextel and/or Donahue are "debt collectors" under FDCPA, nor does Plaintiff allege facts from which it can be shown that either Nextel or Donahue are "debt collectors." Plaintiff's Affirmation in Opposition to the instant motion fails to address this point. Neither Nextel nor Donahue is a debt collector. Further, they are not vicariously liable for the actions of the debt collectors they enlist, *Kolari v. New York-Presbyterian Hosp.*, 382 F. Supp. 2d 562, 573 (S.D.N.Y. 2005) (*citing Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir. 1996)). Therefore, the FDCPA claims against the Instant Defendants are dismissed.

### B.   *FCRA Claims*

The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit. . .in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b). A "consumer reporting agency" is defined as

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). The record does not indicate (and Plaintiff has made no suggestion) that either Defendant Nextel or Defendant Donahue are bound by the FCRA provisions regulating "consumer reporting agencies." *See, e.g., DiGianni v. Bloomingdales, Inc.*, 26 F.3d 346, 348-349 (2d Cir. 1994) ("Retailers...that merely furnish information to consumer reporting agencies based on their experience with consumers are not consumer reporting agencies within the meaning of the FCRA.") (collecting cases).

However, the FCRA also imposes two duties on "furnishers of information," a term that is not defined in the statute. *See generally* 15 U.S.C. 1681s-2. "The category of duties in [1681s-2(a)] relates to the furnishers' duty to report accurate information and their ongoing duty to correct inaccurate information....The category of duties in [1681s-2(b)] governs the funishers' duty once notice is received from a credit reporting agency that there is a dispute as to the completeness or accuracy of the information provided to that reporting agency." *Redhead v. Winston & Winston, P.C.*, 2002 WL 31106934, at *3-4 (S.D.N.Y. Sept. 20, 2002).

1. *Section 1681s-2(a)*

Under § 1681s-2(a), furnishers of information to consumer reporting agencies are prohibited from reporting information if the furnisher has actual knowledge (or consciously avoids knowing) that the information is inaccurate. 15 U.S.C. 1681s-2(a). However, "t[h]ere is no private right of action under section 1681s-2(a)." *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 44 (E.D.N.Y. 2005) (Irizarry, *J.*); *Kane v. Guaranty Residential Lending, Inc.*, 2005 WL 1153623, at *4 (E.D.N.Y. May 16, 2005) (Korman, *J.*) ("[T]he FCRA limits the

8

enforcement of [section 1681s-2(a)] to government agencies and officials"); *see also* 15 U.S.C. § 1681s-2(d). Therefore, to the extent Plaintiff alleges causes of action against the Instant Defendants under this section, those claims are hereby dismissed.

    2.    *Section 1681s-2(b)*

Another potential basis for the Individual Defendants' liability is found in § 1681s-2(b):

> After receiving notice [from a consumer reporting agency] pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided [by the consumer, the person who provided the disputed information shall, *inter alia*,]
>
>     (A)    conduct an investigation with respect to the disputed information;
>
>     (B)    review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
>     (C)    report the results of the investigation to the consumer reporting agency;
>
>     (D)    if the investigation finds that the information is incomplete or inaccurate, report those findings to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b)(1)(A-D). The notice requirement of section 1681i(a)(2) is as follows:

> Before the expiration date of the 5-business day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer. . .the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.

9

15 U.S.C. § 1681i(a)(2)(A). It is upon receipt of notice from a consumer reporting agency that a furnisher of information must conduct an investigation of the disputed information. *See Kane*, 2005 WL 1153623, at *4. ("[T]he duty to investigate in Subsection (b) is triggered only after a furnisher of information receives notice *from a credit reporting agency* of a consumer's dispute.") (emphasis in original).

    a.    *Defendant Nextel*

Plaintiff's Complaint alleges that she contacted Nextel, as well as RMA and Trans Union, in connection with the "derogatory filing" she discovered on her credit report. She also alleges that RMA informed her that it did not have possession of the file relating to her account, and that it returned same to Nextel. She further alleges that she "then" (*i.e.*, after being informed by RMA that Nextel had her file) contacted Trans Union, who promised to contact the "companies concerned" with the disputed charge. Though the Complaint alleged that RMA confirmed the report as accurate, Plaintiff also alleges Nextel's Sigalos contacted her and reported that Nextel was "still investigating" her claims. However, despite instructing Plaintiff to call her back, Sigalos refused to accept further calls from Plaintiff. Though the Complaint fails to artfully plead a FDCA violation, it is not apparent "that the plaintiff can prove no set of facts" establishing that Nextel received notice from Trans Union of Plaintiff's dispute and failed to investigate same. *Allen*, 945 F.2d at 44. Therefore, Nextel's motion to dismiss the FCRA claim against Nextel is denied. *Chance v. Armstrong*, 143 F.3d at 698, 704 (2d Cir. 1998) ("even if we think it highly unlikely that [plaintiff] will be able to prove his allegations, that fact does not

justify dismissal for failure to state a claim.").[2]

### b. *Defendant Donahue*

However, the § 1681s-2(b) claim against Defendant Donahue must be dismissed. Section 1681s-2(b) applies only "upon notice of dispute" pursuant to section 1681i(a)(2), and nowhere in the pleadings does Plaintiff allege that Defendant Donahue, the CEO of Nextel, received notice from a credit reporting bureau of Plaintiff's complaint to Trans Union. *Kane*, 2005 WL 1153623, at *4 ("Notice from an individual consumer, in the absence of notice from a credit reporting agency, is insufficient to trigger the duties contained in Subsection (b)."). Therefore, the FCRA claim against Donahue is dismissed.

### C. *Plaintiff's "State Law" Claims*

The Complaint also makes reference to violations of "New York State Law" though Plaintiff specifies no causes of action. (Complaint ¶ 1.) She merely alleges that Nextel "engaged in a pattern of conduct that is harassing, intimidating and malicious" and that "Defendant Donahue was negligent in handling of the matter," "had the power to rectify Nextel's misdeeds but did nothing" and is contributorily liable to Plaintiff. (Complaint ¶¶ 37-38.) In the Affidavit Plaintiff submitted in opposition to the Instant Defendants' motion to dismiss, Plaintiff makes

---

[2] Contrary to Defendants' arguments, Plaintiff need not allege that the Instant Defendants reported inaccurate information to Trans Union or that they responded to an inquiry by Trans Union following Plaintiff's complaint to the credit reporting agency. Plaintiff need only allege facts which could show that: (1) she lodged a dispute with Trans Union; (2) the complaint was communicated to Nextel; and (3) Nextel failed to investigate the dispute as required by § 1681s-2(b).

only one reference to her state law claims:

> Plaintiff has a valid claim against defendant Donahue and all other defendants not only under the FDCPA and FRCA but also under the New York Law because there was an intentional infliction of emotional distress and libel.

(Fashakin Aff. ¶ 12.)

However, Plaintiff's "state law claims" against the Instant Defendants are preempted. Section 1681h(e) provides, in part: "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency. . .except as to false information furnished with malice or willful intent to injure such customer." Additionally, 15 U.S.C. § 1681t(b)(1)(F), provides that "[n]o requirement or prohibition may be imposed under the laws of any State. . .with respect to any subject matter regulated under. . .section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F).

The Courts of Appeals have yet to reconcile these provisions, causing tension among the interpretations of the district courts. The former FCRA provision permits certain actions where "malice or willful intent to injure [a] customer" is shown, while the latter (a result of a 1996 amendment to the FCRA) seems to indicate complete preemption of state law claims arising out of consumer disputes with "furnishers of information." *See, e.g., Kane,* 2005 WL 1153623, at *6-11 (comparing approaches of various districts). Fortunately, the facts of the Complaint currently before this Court do not fall in the murky intersection of these two provisions. As the

Complaint is completely devoid of allegations of malice or willful intent to injure Plaintiff, her "state law claims" against Defendants Nextel and Donahue are preempted.

III. *Conclusion*

Because the FCRA preempts Plaintiff's "state law claims" against the Instant Defendants, those claims are hereby dismissed. As neither Nextel nor Donahue are "debt collectors" within the meaning of the FDCPA, the FDCPA claims against each of them are also dismissed. Insofar as Plaintiff argues application of § 1681s-2(a), those claims are dismissed for want of a private right of action under that section. Because Plaintiff's Complaint alleges that she notified a consumer reporting agency of her dispute with Nextel; that, after initial contact, Nextel thereafter refused to accept Plaintiff's calls; and that either Nextel or RMA was in possession of her file when the debt was confirmed by RMA, it is not "beyond doubt" that Nextel received notice of her dispute and failed to investigate same. For these reasons, Defendant Nextel's motion to dismiss Plaintiff's claim under § 1681s-2(b) is denied.

However, there is no allegation that Defendant Donahue is involved in the instant dispute, save his receipt of a letter from Plaintiff that did not trigger the requirements § 1681s-2(b). Therefore, Defendant Donahue's motion to dismiss is granted in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
June 28 2006

SANDRA L. TOWNES
United States District Judge

13