UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JANET FASHAKIN,                                               C.A. No: 05-3080
                                    Plaintiff,
         v.                                                   **TRANS UNION LLC'S**
                                                              **MEMORANDUM OF LAW IN**
NEXTEL COMMUNICATION, *et al*.                                **SUPPORT OF MOTION FOR**
                                    Defendants.               **SUMMARY JUDGMENT**
------------------------------------------------------------x

**I.     INTRODUCTION**

The facts of this matter, including a summary of Plaintiff's claims against Trans Union, are set forth in the Local Rule 56.1 Statement of Uncontested Facts ("SJ Facts") and the Declaration of Laura Henry ("Henry Decl.") and exhibits thereto. In short, Plaintiff claims Trans Union, a "consumer reporting agency" ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (the "FCRA") allegedly failed to follow reasonable procedures to assure maximum possible accuracy in consumer reports (§1681e(b)); and allegedly failed to reasonably reinvestigate Plaintiff's dispute of an item in her credit file (§1681i). The claims are solely based on information from Risk Management Associates, Inc. ("RMA"). RMA is a collection agency that was collecting on behalf of Nextel, a mobile phone carrier. RMA furnished to Trans Union an outstanding collection account against Ms. Fashakin, placed in July 2004, with an unpaid balance of $339, collecting for Nextel Communications (the "RMA Item"). SJ Facts ¶3.

Plaintiff submitted a dispute to Trans Union on one occasion, received December 23, 2004 (the "Dispute"). SJ Facts ¶¶6-7. The Dispute provided no information in support of Plaintiff's claim that she did not owe the RMA Item. *Id.* Plaintiff merely stated: "I categorically DISPUTE owing Nextel. …" but provided no details as to the reason Plaintiff disputed the RMA Item. *Id.* Plaintiff also requested the name and address of RMA, and a description of the reinvestigation procedure. *Id.*

In response to the Dispute, Trans Union sent RMA an Automated Consumer Dispute Verification ("ACDV"). *See* SJ Facts ¶¶8-11. The ACDV requested that RMA confirm that Plaintiff was the individual responsible for the account, as well as the account information. RMA confirmed Plaintiff's name, current address and Social Security number. *Id.* RMA also verified all of the information it furnished as accurate, *i.e.*, that the RMA Item was an outstanding collection account with an unpaid balance of $339. *Id.* Trans Union notified Plaintiff of the results of the reinvestigation, and also provided Plaintiff with a description of the reinvestigation procedure, and the address and telephone number of RMA. *Id.* Plaintiff submitted no other disputes to Trans Union prior to the commencement of this action on June 27, 2005. SJ Facts ¶12; Complaint.

Trans Union is entitled to summary judgment on Plaintiff's §1681e(b) claim because it was entitled as a matter of law to rely upon the information furnished to it by RMA,[1] at least before Plaintiff submitted the Dispute. Likewise, Trans Union is entitled to summary judgment on Plaintiff's §1681i claim because, based on the undisputed facts of record, Trans Union entitled to rely on RMA's response to the ACDV.[2]

As set forth in SJ Facts ¶¶14-15, Plaintiff claimed that she was denied credit on several occasions prior to the dispute, and submitted denial letters dated prior to the Dispute. However, at deposition, Plaintiff could identify no occasion at all after the Dispute where a Trans Union

---

[1] The undisputed facts of record also demonstrate that the RMA Item was accurate. In litigation (but not in the Dispute), Plaintiff asserts that she unilaterally stopped paying Nextel because its service was unsatisfactory. However, Plaintiff's mere alleged dissatisfaction with Nextel's service does not render the contract void, and does not absolve Plaintiff's obligations under the contract.

[2] Even if Plaintiff could substantiate her claim that Nextel failed to provide adequate service, Trans Union is entitled to summary judgment because no reasonable reinvestigation by Trans Union could have determined that RMA had no right to furnish the debt to Trans Union. This is especially so here because the Dispute stated only that she disputed the debt. Under these circumstances, there is no question that Trans Union's reinvestigation confirming the accuracy of the item with RMA fully complied with Trans Union's §1681i obligations.

consumer report caused her harm.  *See* Fashakin Dep., pp. 52-54.  As set forth *infra*, the alleged harm occurring prior to the Dispute is clearly not cognizable, and the absence of evidence of harm after the Dispute is fatal to her FCRA claims.

Finally, Plaintiff's claim that Trans Union willfully violated the FCRA is entirely without basis.  Therefore, Trans Union is entitled to summary judgment on all of Plaintiff's claims.

## II. ARGUMENT

### A. The Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> If the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court defined the standard for summary judgment set forth in Rule 56(c):

> ...the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

106 S. Ct. at 2552-53.  The burden of proof with respect to each claim, including proof of an inaccuracy, and causation of harm, is upon Plaintiff.  *See, e.g., Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824 (E.D. NY 1994).  As such, Trans Union meets its summary judgment obligation by pointing the court to the absence of evidence to support Plaintiff's claims.

3

*See Celotex*, 477 U.S. at 325. Instantly, Trans Union is entitled to summary judgment because: 1) Trans Union was entitled to rely upon the information furnished by RMA; 2) Trans Union properly reinvestigated the Dispute; 3) The RMA Item was accurate; 4) Plaintiff suffered no cognizable harm as a result of Trans Union's alleged conduct; and 5) Trans Union did not willfully violate the FCRA.

> **B.     Trans Union's Reporting of the RMA Item Prior to the Dispute Was Reasonable as a Matter of Law; Plaintiff Has Failed To Demonstrate Otherwise.**

It is well established that, as a CRA, Trans Union is entitled as a matter of law to rely upon information provided to it by a furnisher, absent prior notice or knowledge that the information is inaccurate. *Podell v. Citicorp Diners Club*, 112 F.3d 98, 105 (2d Cir. 1997):

> Trans Union did not breach its duties under FCRA by relying on the updates it received from [the furnishers], and that Trans Union was entitled to report [the disputed debts], at least until it heard from [the plaintiff] directly.

*See also Casella v. Equifax Credit Information Servs.*, 56 F.3d 469, 474 (2nd Cir. 1995) ("Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information."); *Whelan, supra*, 862 F.Supp 830 ("The court concludes that due to plaintiffs' failure to present any evidence showing that Trans Union was notified prior to [the lawsuit] that its credit report concerning the Whelans contained inaccurate information, Trans Union is entitled to summary judgment on plaintiff's claim under §1681e(b).")[3]

---

[3]     The weight of authority in support of this FCRA axiom is overwhelming. *See also, e.g., Sarver v. Experian Info. Solutions*, 390 F.3d 969 (7th Cir. 2004); *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994); *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d.409, 416 (4th Cir. 2001) ("we hold that the plaintiff bears the burden under §1681e(b) to show that the [CRA] did not follow reasonable procedures."); *Smith v. Auto Mashers*, 85 F.Supp.2d 638, 641 (W.D. VA 2000) *citing* 16 C.F.R. Part 600 at 607 ¶3: "[§1681e(b)] does not hold a [CRA] responsible where an item of information that it receives from a source that it reasonably believes to be reputable appears credible on its face, and is transcribed, stored and communicated as provided by that source."

In the instant matter, Plaintiff has failed to demonstrate that, at least prior to the Dispute received on December 23, 2004, Trans Union had any notice or knowledge that the RMA Item was inaccurate. Trans Union was clearly entitled to report the RMA Item, "at least until it heard from [Plaintiff] directly." *Podell*, *supra*. Plaintiff's §1681e(b) claim is entirely without merit.

### C. Trans Union Reasonably Reinvestigated the Dispute.

After Trans Union "heard from [Plaintiff] directly" (by receipt of the Dispute), Trans Union properly confirmed Plaintiff's identity as the person responsible for the account, as well as the accuracy of all of the account information furnished by RMA. Under these circumstances, Trans Union complied fully with its FCRA §1681i duties.

FCRA §1681i(a) imposes a duty upon Trans Union, as a CRA, to "reinvestigate" disputed items of information, and clearly sets forth the steps to reinvestigate. §1681i(a)(1)(A) requires, upon receipt of a dispute directly from the consumer, the CRA to "reinvestigate… and report the current status of the disputed information, or delete the item from the file…" within 30 days of receipt of the dispute. §1681i(a)(2) requires the CRA provide "prompt notice of dispute to [the] furnisher of information" that "include[s] all relevant information received by the [CRA] from the consumer…" §1681i(a)(3) relates to frivolous or irrelevant disputes. §1681i(a)(4) requires the CRA "review and consider all relevant information submitted by the consumer…" §1681i(a)(5) relates to requirements of information found to be inaccurate or unverifiable as a result of the reinvestigation. §1681i(a)(6) requires the CRA notify the consumer of the results of the reinvestigation. §1681i(a)(7) requires a CRA to provide a description of the reinvestigation procedure upon receipt of a request for such description by the consumer. FCRA §§1681i(b) and (c) provide that, if the reinvestigation does not resolve the dispute, and the consumer files a statement of dispute, the CRA shall include such statement in subsequent consumer reports.

Instantly, the Dispute stated merely that Plaintiff disputes the item; the Dispute did not state why. Trans Union provided a §1681i(a)(2) notice of dispute that included *more* than the relevant information provided by Plaintiff – the notice requested that RMA verify the identity of the account holder and the account information. RMA confirmed the identity of Plaintiff, and all other aspects of the RMA Item, as accurate. Trans Union notified Plaintiff of the results of the reinvestigation, and per Plaintiff's request, provided Plaintiff the address and telephone number of RMA, and a description of the reinvestigation procedure. Plaintiff did not request a statement of dispute, or make any other communications to Trans Union.

This procedure is entirely consistent with the procedure endorsed by the Second Circuit in *Podell*, *supra*. In *Podell*, the Second Circuit affirmed a district court's grant of summary judgment on a reinvestigation claim concerning a reinvestigation which was substantially similar to the facts alleged herein. The plaintiff in *Podell* asserted that a debt was opened in his name without his knowledge or authorization. 112 F.2d at 100. Podell disputed this information to CRA defendant TRW, and TRW sent notification to the subscriber and the subscriber confirmed the account belonged to the plaintiff. 101 F.3d at 101. The court of appeals affirmed the district court's grant of summary judgment in favor of TRW, describing the reinvestigation and cogently explaining why the reinvestigation satisfied the FCRA:

> The credit reporting agency's "reinvestigation" typically entails sending a Consumer Dispute Verification form ("CDV") to subscribers (usually creditors) that have reported a disputed account. As the district court explained, "the CDV asks subscribers to check whether the information they have about a consumer matches the information on TRW's credit report. If a subscriber fails to respond to a CDV or indicates that TRW's account information is incorrect, TRW deletes the disputed information." *Podell [v. Citicorp Diner's Club], 914 F. Supp. [1025,] 1028 [(S.D. NY 1997) (the district court opinion)].* If reinvestigation does not resolve an account dispute, consumers may file with their

>credit report "a brief statement setting forth the nature of the dispute," *15 U.S.C. § 1681i*(b), which must be included "in any subsequent consumer report containing the information in question" along with a notation that the matter is disputed by the consumer. *15 U.S.C. § 1681i*(c). 101 F.3d at 101.

Instantly, Trans Union's reinvestigation procedure, as described in the Henry Decl., *Exhibit 3* thereto, and the SJ Facts, is in all material respects identical to the procedure endorsed by the Court in *Podell*, and complies fully with the plain language of FCRA §1681i(a).

Trans Union submits that, even if Plaintiff informed Trans Union that the cell phone service was inadequate, Trans Union would not have been required to determine whether Nextel breached the contract. Trans Union could have done nothing to resolve ***this*** dispute short of adjudicating whether the contract was valid. This is clearly beyond the duties imposed by §1681i. An FCRA dispute does not provide a forum for a consumer to make a collateral attack on the validity of a debt. *Williams v. Colonial Bank*, 826 F.Supp. 415, 418 (M.D. AL 1993) *aff'd* 29 F.3d 641 (11th Cir. 1994); *Dauster v. Household Bank*, 396 F. Supp. 2d 663 (E.D. VA 2005). *See also Cahlin v. GMAC*, 936 F.2d 1156, 1160 (11th Cir. 1991) ("a section [1681i](a) claim is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry." (*Emphasis in original.*))[4]

However, Plaintiff's dispute did not even demand that Trans Union undertake such a reinvestigation. Plaintiff merely stated that she "DISPUTE[ed]" owing Nextel. There is simply no question that Trans Union reinvestigated in accordance with §1681i.

---

[4] Trans Union is also entitled to summary judgment because the RMA Item was factually accurate. "A showing of inaccuracy is an essential element of a claim under the Fair Credit Reporting Act." *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996). *See also Houston v. TRW Information Servs.*, 707 F. Supp. 689 (S.D.N.Y. 1989); *Boothe v. TRW Credit Data*, 768 F. Supp. 434, 437 (S.D.N.Y. 1991); *Klotz v. Trans Union LLC*, 246 F.R.D. 208 (E.D. PA 2007). Plaintiff admits she entered the contract and ceased making payments before the term of the contract had expired. SJ Facts ¶5.

7

**D.     Plaintiff Has Failed to Present Sufficient Evidence of Harm Resulting from Trans Union's Publication of the RMA Item.**

In *Caltabiano v. BSB Bank*, 387 F. Supp.2d 135 (E.D. NY 2005) (Seybert, J.), the Court (relying on the Second Circuit opinion of *Casella*, *supra*) held that proof of harm caused by an FCRA violation is essential to a negligent FCRA claim; absent such proof, the Court need not address the other elements of an FCRA claim:

> To maintain a claim under the FCRA, Plaintiff bears the burden of demonstrating 'actual damages sustained' as a result of the Defendants' activities." *Casella* 56 F.3d at 473.
> \*     \*     \*     \*
> Plaintiff has not made out a prima facie case for damages because he has failed to establish pecuniary, emotional, or punitive damages. Thus, all of Plaintiff's remaining FCRA claims are dismissed. *See, e.g., Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (holding to establish a claim under § 1681e(b), plaintiff must demonstrate injury). Consequently, this Court will not address the other elements of Plaintiff's FCRA claims.

*See also Obabueki v. Choicepoint, Inc.*, 236 F.Supp.2d 278 (S.D. NY 2002) *aff'd* 319 F.3d 87 (2nd Cir. 2003) ("[A] court may properly reject a plaintiff's claims "due to a lack of causation between the harm alleged" and a defendant's "violations of the FCRA.") *quoting Casella*, *supra*, 56 F.3d at 474-7."); *Wantz v. Experian Info. Solutions, Inc.*, 386 F.3d 829, 834 (7th Cir. 2004); *Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001); *Cahlin*, *supra*.

In *Cadet v. Equifax Credit Info. Servs.*, E.D. NY No: 1:05-cv-04843-SLT-LB (October 10, 2007) (Report & Recommendation of Bloom, M.J.), attached hereto as *Exhibit D*; *adopted* 2008 U.S. Dist. LEXIS 3983 (January 18, 2008) (Townes, J.), the plaintiff produced evidence in support of his claim that he was denied credit, but such evidence related to events that occurred prior to the plaintiff's dispute. The Court granted summary judgment because the pre-dispute denial claims were not cognizable, and there was no evidence of harm after the dispute:

8

> There is evidence in the record that … credit and loan applications made by plaintiff were denied. … However, none of these events occurred between … the date Trans Union was notified of the inaccuracy and … the date [Trans Union] corrected [its records]. Therefore, plaintiff's negligence claim under the FCRA against Trans Union also fails.

*Exhibit D* at p.11.  The facts of the instant matter are identical.  Plaintiff produced denial letters from Bank of America dated November 30, 2004 and Discover dated December 20, 2004, both ***prior*** to Trans Union's receipt of the Dispute, December 23, 2004.  At deposition, Plaintiff admitted that she was unable to identify a single instance in which she was denied credit, or suffered any other harm, after the Dispute:

> [Q] … in the time period between the Discover letter December, December 20, 2004, and June 27, 2005, the date the complaint was filed.  The question was, did anyone get a Trans Union credit report, to your knowledge, and tell you that you weren't getting credit based on that?
> A.  Unless they put it in writing like the one I produced to you, I wouldn't know whether it was Trans Union or not.  You have three major agency.
> Q.  You don't know is the answer?
> A.  I don't know.
> …
> Q.  After the action are you aware of any instance you were denied any credit?
> A.  After the action I wasn't monitoring anymore.  There could have been one or two.  I am not going to use that against you people because I already know there was something that was wrong.  It was like once I brought the action, I just kept going.  I didn't care anymore.  I stop.  Maybe I even stopped applying for things.  Just use what it is I had in existence.

Fashakin Dep. pp.52-4.[5]

Instantly, Plaintiff has failed to adduce evidence that he suffered any cognizable harm as a result of any act or omission by Trans Union. Accordingly, Trans Union is entitled to summary judgment on Plaintiff's negligent FCRA claims.

### E. Plaintiff's Claim for Punitive Damages Is Baseless.

In *Safeco Ins. Co. of Am. v. Burr*, -- U.S. --, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007), the Supreme Court held that a willful FCRA violation required a finding that defendant's challenged practice was based on an "objectively unreasonable" interpretation of the FCRA. "Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." 127 S.Ct at 2216, FN20. In the instant matter, Trans Union's §1681e(b) and §1681i procedures are amply supported by 1) the plain language of the statute; 2) court guidance; and 3) guidance from the FTC. Therefore, Trans Union's belief that its procedures did comply with the FCRA is not objectively unreasonable, and Trans Union is entitled to summary judgment on Plaintiff's willfulness claims.

---

[5] Plaintiff's testimony that she refrained from applying for credit because she knew her file contained the allegedly inaccurate item is insufficient to establish a cognizable claim of damages. In *Casella*, *supra*, 56 F.3d at 475, the Second Circuit held:

> Casella's argument boils down to the bare contention that he is entitled to damages for pain and suffering simply because he knew of an inaccurate and potentially damaging item in his credit report. We are unaware of any case extending FCRA damages that far.... and we decline to reach that result here.

*See also Caltabiano*, *supra* ("In order to support a claim for emotional distress damages, a plaintiff must demonstrate they suffered an 'actual injury.' To demonstrate an actual injury, a plaintiff generally cannot stand on his subjective testimony alone, but must set forth 'other evidence that such an injury occurred.'" 387 F.Supp.2d at 142 *quoting Patrolmen's Benevolent Ass'n of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002).) Plaintiff has failed to demonstrate that she suffered any "actual injury" as a result of Trans Union's conduct.

The FCRA requires that a CRA "follow reasonable procedures to assure maximum possible accuracy." §1681e(b). As set forth above, Trans Union's reliance upon information it receives from furnishers is consistent with the plain language of the statute; has been repeatedly endorsed by the Second Circuit Court of Appeals, as well as other Courts; and is supported by regulatory authority. 16 CFR Part 600, 607 ¶3. (*quoted supra*).

As also set forth above, the steps of a §1681i reinvestigation are clearly set forth in the statute, and Trans Union complied with these steps. Trans Union's reinvestigation procedure is in all material respects identical to the procedure endorsed by the Second Circuit in *Podell*, cited above. *See also Dickens v. TransUnion Corp.,* 18 Fed.Appx.315, 319 (6th Cir.2001) (the court of appeals affirmed the grant of summary judgment (on accuracy) and dismissal of plaintiff's reinvestigation claim, finding no flaw in Trans Union's electronic dispute verification system); *Bagby v. Experian Info. Systems*, 162 Fed.Appx.600, 606-07 (7th Cir.2006); *Davis v. Equifax Info. Servs. LLC*, 346 F.Supp.2d 1164, 1176 (N.D.Ala.2004); *Lee v. Experian Info. Solutions*, 2003 U.S. Dist. LEXIS 17420, at 19–20 (N.D.Ill.Oct.2, 2003) ("[T]he CDV procedure alone is accepted by courts as an adequate method both for assuring accuracy and for reinvestigation.").

FTC guidance respecting the ACDV procedure is to the same effect. In August 2006, the FTC submitted a report to Congress, pursuant to §313(b) of the Fair and Accurate Credit Transactions Act ("FACTA")[6] on reinvestigations by CRAs (the "FACTA Report"). http://www.ftc.gov/os/comments/fcradispute/P044808fcradisputeprocessreporttocongress.pdf.[7]

---

[6] FACTA, enacted in 2003, substantially amended the FCRA.

[7] Congress empowered the FTC to enforce "the requirements imposed" under the FCRA (See FCRA §1681s(1), ***Administrative Enforcement***.) With respect to the FCRA, the well-researched FACTA Report is entitled to substantial authoritative weight because the Report was mandated by Congress on the very FCRA provisions at issue *sub judice*. Moreover, the FTC is the "executive department" "entrusted to administer" the FCRA. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984); *A-1 Credit and Assurance Co., Inc. v. Trans Union Credit Information Co.*, 678 F.Supp 1147, 1151 (E.D. PA 1988) (FTC's interpretation of the FCRA entitled to "substantial weight.")

The FACTA Report contains a detailed description of the exact reinvestigation procedures at issue here – the use of ACDV systems and codes for consumer reporting agencies to communicate with furnishers of information.  (*See* FACTA Report, pp. 10-18) .  The FTC did not recommend against the continued use of the very reinvestigation processes at issue here.

Because Trans Union's §1681e(b) and §1681i procedures are not based on objectively unreasonable interpretations of the FCRA, Trans Union is entitled to summary judgment on Plaintiff's FCRA willfulness claims.

### III.   CONCLUSION

For all of the above reasons and authorities, Defendant Trans Union LLC's Motion for Summary Judgment should be granted, and Plaintiff's Complaint dismissed with prejudice.

>     Respectfully submitted,
>
>     KOGAN, TRICHON & WERTHEIMER, P.C.
>
>
>     */s/ Timothy P. Creech*
>     TIMOTHY P. CREECH
>     1818 Market St., 30th Floor
>     Philadelphia, PA 19103
>     (215) 575-7600; Fax: (215) 575-7688
>     email: tcreech@mstkw.com
>
>     *Counsel for Defendant,*
>     *Trans Union LLC*

DATED:     April 4, 2008