# EXHIBIT "E"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BERTHONY CADET,

                Plaintiff,

    -against-

EQUIFAX CREDIT INFORMATION SERVICES;
EXPERIAN CREDIT INFORMATION SERVICES;
TRANS UNION CREDIT INFORMATION
SERVICES and EXPERIAN INFORMATION
SOLUTIONS, INC.,

                Defendants.
----------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 10 2007

P.M.
TIME A.M.

**REPORT AND
RECOMMENDATION
05 CV 4843 (SLT) (LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff, Berthony Cadet, Jr., brings this *pro se* action pursuant to the Fair Credit Reporting

Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), seeking damages allegedly incurred as a result of

defendants' failure to remove incorrect information from his credit reports. Plaintiff further alleges

claims for fraud, negligence, and defamation.[1] Defendants move for summary judgment under

Federal Rule of Civil Procedure 56.[2] The Honorable Sandra L. Townes, United States District Judge,

referred this motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b).

For the following reasons, it is respectfully recommended that defendants' motions should be granted

and the action should be dismissed.

---

[1] Plaintiff also raises two new claims in his Opposition to Summary Judgment: a
negligence claim against Equifax for failure to provide copies of his credit report upon request,
and a fraud claim against Trans Union for the production of allegedly fraudulent documents
during discovery. The Court declines to consider these claims as new claims cannot be raised in
opposition to a motion. See Beckman v. U.S. Postal Service, 79 F.Supp.2d 394, 407 (S.D.N.Y.
2000) ("Because a failure to assert a claim until the last minute will inevitably prejudice the
defendant, courts in this District have consistently ruled that it is inappropriate to raise new
claims for the first time in submissions in opposition to summary judgment.") (internal
quotations omitted).

[2] Defendants have given plaintiff the requisite notice under Local Civil Rule 56.2.



## BACKGROUND

Plaintiff alleges that in 1998, the New York City Child Support record incorrectly listed him as owing \$38,221,[3] and that this information appeared on his credit reports from defendants, Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union"). Am. Compl. ¶¶ 23, 45.[4] Plaintiff alleges that this misinformation caused several credit and loan companies to reject his applications between 1998 and the date he filed the instant complaint, March 21, 2005. Experian Rule 56.1 Statement ¶¶ 2, 17-18, 20-22, 24.[5] As a result, plaintiff is seeking ten million dollars (\$10,000,000) in damages. Am. Compl. ¶ 74.

Specifically, plaintiff alleges that he was denied: car financing in 1998, 2001, and 2002; an apartment in 1999; a business loan in 2000; a car dealer license in 2001; and the ability to invest in commercial property in 2002. Experian Rule 56.1 Statement ¶ 2. Plaintiff alleges that when he

---

[3] Plaintiff contends that this debt should have been attributed to his father, Berthony Cadet, Sr.

[4] "Am. Compl." references plaintiff's August 29, 2005 "Amended Amended Complaint," attached to Declaration of Andrew Sockol as Exhibit A.

[5] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Although plaintiff opposed defendants' motions, he did not file a counter-statement under 56.1(b) controverting the facts in defendants' 56.1 statements. As such, the Court may deem the facts in defendants' Rule 56.1 statements admitted. See Local Rule 56.1(c). However, the Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement, "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, this Court will deem admitted only those facts in defendants' Rule 56.1 statements that are supported by admissible evidence and not controverted by other admissible evidence in the record.

applied for financing from Manhattan Ford in November 2002, his credit application was denied because his credit was insufficient, but Manhattan Ford did not specify more than that. Id. ¶ 18; Cadet Dep. at 48.[6] In May 2004, plaintiff's application for a Citi Platinum Select credit card was denied, but plaintiff did not attempt to find why. Experian Rule 56.1 Statement ¶ 20. On March 9, 2005, plaintiff applied for a loan from Independence Community Bank. Id. ¶ 21. Plaintiff's application was denied due to the "lack of established accounts with recent updates on [his] consumer credit report." Id. ¶ 22; Declaration of Andrew Sockol ("Sockol Decl.") Ex. I. In May of 2006, plaintiff applied to MBNA for a credit card. Experian Rule 56.1 Statement ¶ 24. Plaintiff states that his MBNA application was denied "because [he] didn't have any established line of credit." Id. ¶ 24; Cadet Dep. at 46.

Plaintiff has only had two credit accounts. Experian Rule 56.1 Statement ¶ 28. Plaintiff had a student loan from Citibank for $1,000 opened in 1996 or 1997, on which plaintiff admits making three or four late payments. Id.; Trans Union Rule 56.1 Statement ¶ 18. The other credit account was listed on plaintiff's May 19, 2005 Experian credit disclosure as "Asset Acceptance, LLC" and was categorized as a collection account that was past due as of April 2005. Experian Rule 56.1 Statement ¶ 28. Plaintiff has never had any credit card, mortgage, automobile loan, or other type of loan. Trans Union Rule 56.1 Statement ¶ 18. The only other event listed on plaintiff's credit history was a collection on a debt owed to Sprint PCS. Id. ¶ 19; Declaration of Laura Henry ("Henry Decl.") Ex. 2, 4.

---

[6] Cadet's Deposition transcript is attached in part to Declaration of Andrew Sockol at Exhibit D (hereinafter "Cadet Dep.").

3

## I.  Experian

Plaintiff has produced seven letters allegedly sent to all three credit reporting agencies requesting copies of his credit reports.  Experian Rule 56.1 Statement ¶ 6.  None of these letters disputed information contained in the credit reports.  Id. ¶ 7.  Plaintiff's initial complaint dated March 1, 2005 was served upon Experian on May 6, 2005.  Id. ¶ 9; Sockol Decl. Ex. B.  Plaintiff has produced no evidence that he contacted Experian prior to filing his initial complaint to dispute the information on his credit report.  Experian Rule 56.1 Statement ¶ 9.  As of May 19, 2005, just thirteen days after the complaint was served, Experian had removed the disputed account information from plaintiff's credit report.  Id. ¶ 11.

## II.  Trans Union

Trans Union received plaintiff's letter requesting his credit report and requesting Trans Union to remove incorrect information on December 17, 2004.  Trans Union Rule 56.1 Statement ¶ 8; Henry Decl. Ex. 1.  Plaintiff's letter did not specify what information he was disputing, but stated that he was "submitting a wrong party warrant letter as proof of [his] innocence" as an enclosure.  Henry Decl. Ex. 1.  Plaintiff attached a letter from the New York State Department of Taxation and Finance, which stated, "we have no record of [plaintiff's] social security number in relation to these tax warrant(s)."  Id.  Below this statement, the letter listed an amount of $38,220 associated with warrant number C97009256W001.  Id.  Trans Union asserts that the warrant ID "did not match any information contained in plaintiff's Trans Union consumer credit file" and that the operator who reviewed plaintiff's letter did not identify the disputed item in plaintiff's file.  Trans Union Rule 56.1 Statement ¶¶ 10-11.  Plaintiff's Trans Union credit report dated December 17, 2004 reflects an entry of a civil judgment in favor of the New York State Tax Commission in the amount of $38,220 and

4

a past due balance of $39,990 placed for collection by the Office of Child Support. Id. ¶ 9; Henry Decl. Ex. 2.

On January 18, 2005, plaintiff called Trans Union and disputed the report's listing of a civil judgment in favor of New York State Tax Commission and a past due balance owed to the Office of Child Support. Trans Union Rule 56.1 Statement ¶ 12. On January 20, 2005, Trans Union also received a form "Request for Investigation" from plaintiff that disputed these same items. Id. ¶ 13. On February 15, 2005, Trans Union sent plaintiff a disclosure showing that the New York State Tax Commission judgment and the Office of Child Support data had been deleted from plaintiff's credit report. Id. ¶ 14. The information that was removed did not appear on plaintiff's file at any time after February 15, 2005. Id. ¶ 15.

## III.    Equifax

Plaintiff's claim against Equifax is based on a letter from Independence Community Bank denying him a line of credit. Sockol Decl. Ex. I. This letter states that Independence Community Bank used reports from Equifax and Experian to deny plaintiff a line of credit. Id. The letter lists a "lack of established accounts with recent updates on [his] consumer credit report" as the reason for denying plaintiff's credit application. Id. Plaintiff has not demonstrated that Equifax ever issued an inaccurate credit report about him to a third party. Equifax Rule 56.1 Statement ¶ 4.

## PROCEDURAL HISTORY

On March 21, 2005, plaintiff filed his initial complaint in the Supreme Court, Kings County, against Equifax, Experian, Trans Union, "New York City Child Support Services," and the "New York City Taxation of Finance Services." No defendant was served with the original complaint.

5

<u>See</u> Notice of Removal at 1. On May 4, 2005, plaintiff filed an amended complaint. No defendant

was served with the amended complaint. <u>Id.</u> at 2. On June 22, 2005, the Supreme Court dismissed

Child Support Services from the action. On September 20, 2005, the court granted plaintiff leave

to file an "amended amended complaint," dismissed the Department of Finance, and granted plaintiff

leave to "file as action in court of proper jurisdiction."[7] <u>Id.</u> at 2-3, 191. After dismissal of the non-

diverse defendants, the remaining defendants removed the case to this Court based on diversity

jurisdiction on October 14, 2005.[8] The parties conducted discovery. Defendants now move for

summary judgment and plaintiff opposes their motions.

## STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers, interrogatories

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing

law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "A dispute regarding a material

fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" <u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d 1531, 1535 (2d Cir.

---

[7] A second amended complaint titled "Amended Amended Complaint" was filed by plaintiff on August 29, 2005 in state court, prior to the court's September 20, 2005 order dismissing the Department of Finance and granting plaintiff leave to amend again. <u>See</u> Sockol Decl. Ex. A. No other amended complaint was filed by plaintiff after the September 20, 2005 order. <u>See</u> Notice of Removal at 3 n.4.

[8] Plaintiff subsequently filed a motion to remand the action to the Supreme Court of Kings County, a motion for preliminary injunction, a motion for summary judgment, and a motion to suppress his deposition testimony, all of which were either withdrawn or denied.

6

1997) (quoting <u>Anderson</u>, 477 U.S. at 248); <u>see also</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Celotex Corp. v. Cadrett</u>, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." <u>Pinto v. Allstate Ins. Co.</u>, 221 F.3d 394, 398 (2d Cir. 2000).

"An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>see</u> <u>Matsushita</u>, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. <u>Anderson</u>, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." <u>Niagra Mohawk Power Corp. v. Jones Chem., Inc.</u>, 315 F.3d 171, 175 (2d Cir. 2003) (quoting <u>Kerzer v. Kingly Mfg.</u>, 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, the "'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." <u>Id.</u> (quoting <u>Anderson</u>, 477 U.S. at 252).

Finally, "[w]here the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them 'to raise the strongest possible arguments that they suggest.'" <u>Forsyth v. Fed'n Empl. & Guidance Serv.</u>, 409 F.3d 565, 569 (2d Cir. 2005) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)).

## DISCUSSION

### I.    Common Law Negligence and Defamation Claims

Plaintiff's common law negligence and defamation claims are limited by the FCRA, 15

U.S.C. § 1681h(e), which provides in relevant part as follows:

> Except as provided in sections 1681n and 1681o of this title, no
> consumer may bring any action or proceeding in the nature of
> defamation, invasion of privacy, or negligence with respect to the
> reporting of information against any consumer reporting agency . . .
> except as to false information furnished with malice or willful intent
> to injure such consumer.

This Court has defined "malice" in the context of the FCRA in the same terms as in an action for

libel. Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 833 (E.D.N.Y. 1994).

A report will be deemed to have been made with malice "if the speaker knew it was false or acted

with reckless disregard of its truth or falsity." Id. This Court has interpreted "willful" in the context

of the FCRA to "require a showing that the agency knowingly and intentionally committed an act

in conscious disregard for the rights of others." Id. (citations and internal quotations omitted); see

also Casella v. Equifax Credit Info. Serv., 56 F.3d 469, 476 (2d Cir. 1995) (finding that defendant's

actions did not support the kind of "conscious disregard" or "deliberate and purposeful" actions

necessary to make out a claim for willful noncompliance under the FCRA).

Plaintiff presents no evidence that defendants acted willfully or maliciously here. There is

no evidence that Experian ever published a report containing the incorrect information to a third

party. Even if such evidence were presented, plaintiff never alerted Experian or Equifax that he

disputed information on his credit reports prior to serving his initial state court complaint. Without

such knowledge that plaintiff was disputing information on his report, neither Experian nor Equifax

8

could have acted with willful intent to injure plaintiff. See Whelan, 862 F. Supp. at 833. Furthermore, when asked whether he believed that Experian had maliciously or willfully tried to cause him harm, plaintiff responded that he "[did]n't have any reason to believe that, to come to that conclusion." Cadet Dep. at 86.

Additionally, the record does not support a claim of willful or malicious conduct on the part of Trans Union. Although Trans Union did not immediately identify what information plaintiff was disputing in his December 17, 2004 letter, it removed the information from plaintiff's account shortly thereafter, when it received a phone call and plaintiff's written dispute on an official form. Plaintiff has not demonstrated that defendants "knowingly and intentionally committed an act in conscious disregard for the rights of others." Whelan, 862 F. Supp. at 833. Therefore, defendants' motions for summary judgment should be granted on plaintiff's common law negligence and defamation claims.

## II. FCRA Negligence Claim

The FCRA provides a private right of action against credit reporting agencies for the negligent or willful violation of duties imposed under the statute. See 15 U.S.C. § 1681n-o. A credit reporting agency is liable for actual damages sustained by the consumer as a result of the violation, as well as the costs of the action and reasonable attorney's fees in the case of a successful action to enforce liability. Id. In the case of willful noncompliance, the credit reporting agency may also be subject to punitive damages. 15 U.S.C. § 1681n.

A credit reporting agency generally has no duty to reinvestigate credit information prior to being notified of a dispute by a consumer. See Casella, 56 F.3d at 473 (holding that damages occurring prior to appellant notifying credit reporting agencies of inaccurate credit information

9

"cannot be compensable as 'actual damages' for a violation of the FCRA"); Whelan, 862 F.Supp. at 830 (granting defendant summary judgment where plaintiff failed to present evidence that the credit reporting agency had been notified of inaccuracies on credit report prior to plaintiff's alleged damages).

### A.    Experian and Equifax

Plaintiff provides no evidence that he notified Experian or Equifax about the inaccurate information on his credit reports prior to filing his initial state court complaint on March 21, 2005. The numerous letters that plaintiff allegedly sent to Experian and Equifax did not, in fact, dispute the information on his credit reports, but simply requested copies of his credit reports. Sockol Decl. Ex. J. When questioned about the letters at his deposition, plaintiff stated, "I didn't think I need[ed] to complain about it. I just need[ed] to ask for the credit report." Cadet Dep. at 12. Plaintiff alleges that he later filled out and returned the investigation forms attached to his credit report in an effort to dispute the inaccurate information; however, he does not have copies of or know when he sent these dispute forms. Id. at 15. Plaintiff has not demonstrated that Experian or Equifax received notice of the inaccuracies on his credit reports prior to the date that plaintiff filed his initial state court complaint. This lack of notice is fatal to plaintiff's negligence claim under the FCRA against Equifax and Experian. See Casella, 56 F.3d at 473; Whelan, 862 F.Supp. at 830.

### B.    Trans Union

Plaintiff first alerted Trans Union to the presence of inaccurate information on his credit report on December 17, 2004. Therefore, the only damages plaintiff could claim would be those resulting from Trans Union's failure to correct the report after December 17, 2004. No such damages exist in this case. To survive a motion for summary judgment on a claim of negligent

10

noncompliance, plaintiff bears the burden of proving actual damages sustained as a result of the defendant's actions. Casella, 56 F.3d at 473; Caltabiano v. BSB Bank, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005). There is no evidence that Trans Union provided plaintiff's credit report to any third party or that he suffered any damages between December 17, 2004 and the date Trans Union removed the inaccurate information from plaintiff's credit report.

There is evidence in the record that the following credit and loan applications made by plaintiff were denied: car financing in 1998, 2001, and 2002; an apartment in 1999; a business loan in 2000; a car dealer license in 2001; the ability to invest in commercial property in 2002 (Am. Compl. ¶ 2); car financing from Manhattan Ford in November 2002 (Am. Compl. ¶ 18); an application for a Citi Platinum Select credit card In May 2004 (Experian Rule 56.1 Statement ¶ 20); a loan from Independence Community Bank on March 9, 2005 (Am. Compl. ¶¶ 21-22); and an MBNA credit card in May of 2006 (Am. Compl. ¶ 24). However, none of these events occurred between December 17, 2004, the date Trans Union was notified of the inaccuracy, and February 15, 2005, the date they corrected their records. Therefore, plaintiff's negligence claim under the FCRA against Trans Union also fails.

## III. Fraud Claim

It is well established that claims of fraud must be "stated with particularity." Fed. R. Civ. P. 9(b). In order to meet the requirements set forth by Rule 9(b), this Court has noted that a complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made and identify those responsible for the statements." Mercado v. Playa Realty Corp., No. CV 03-3427(JO), 2005 WL 1594306, at *12 (E.D.N.Y. July 07, 2005)

11

(quoting McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir. 1992)).

Plaintiff alleges fraud three times in his complaint; however, he does not do so with particularity. Am. Compl. ¶ 20, 41, 65. Rather, plaintiff simply claims that "fraud action was performed by the three credit bureau named defendants when failure to remove false information was still listed." Id. ¶ 41. This is plainly insufficient. Therefore, defendants' motions for summary judgment on plaintiff's fraud claims should be granted.

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motions for summary judgment should be granted and plaintiff's action should be dismissed. It is further recommended that the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from a judgment entered herein would not be taken in good faith for the purpose of denying plaintiff *in forma pauperis* status on appeal. See Coppedge v. United States, 369 U.S. 438 (1962).

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F. 2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

LOIS BLOOM
United States Magistrate Judge

Dated: October 9, 2007
      Brooklyn, New York

13